**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **SHARON HILL TURK**, on behalf of herself and all others similarly situated, | )<br>)<br>) |
| Plaintiff, | ) Case No. _____ |
| v. | ) Hon. |
| **TURBO RESTAURANTS US, LLC**, a Texas limited liability company, | ) **CLASS ACTION COMPLAINT** |
| | ) **JURY TRIAL DEMANDED** |
| Defendant. | ) |

**VERIFIED CLASS ACTION COMPLAINT**

Plaintiff, Sharon Hill Turk ("Plaintiff"), individually and on behalf of other similarly situated individuals, brings this Class Action Complaint against Defendant Turbo Restaurants US, LLC ("Defendant") for violating the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"). Plaintiff alleges the following upon personal knowledge as to Plaintiff's own acts and experiences, and as to all other matters, upon information and belief, including an investigation conducted by Plaintiff's attorneys:

**INTRODUCTION**

1. Defendant, Turbo Restaurants US, LLC, is an Arby's restaurant franchisee with multiple locations throughout the state of Illinois.

2. Upon information and belief, Defendant uses a biometric time-tracking system that requires its employees to use fingerprint scans as a means of authentication each time they begin or conclude a shift, clock in or out for breaks, or access the registers for any reason at all, such as cashing out customers.

1

3. BIPA was enacted in 2008 to regulate two types of biometric data. First BIPA regulates any "biometric identifier," defined as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry," and specifically excludes a lengthy list of specific identifiers. 740 ILCS 14/10. Second, it regulates any "biometric information" meaning "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.*

4. BIPA is not limited to simply the capture of such biometrics. BIPA regulates the entire life cycle of biometric data captured by a private entity from any individual, from capture to use and disclosure.

5. Biometric identifiers allow private entities, such as Defendant, to accurately and with some degree of certainty track the hours its employees work. Additionally, Defendant employs this system to reduce the amount of theft and fraud committed on its registers. The biometric tracking system permits Defendant to pinpoint specifically who is signed in to any register at any given moment because of the unique nature of biometric identifiers.

6. Under BIPA, because of the unique nature of biometric identifiers, private entities, such as Defendant, may not collect, capture, purchase, or otherwise obtain an individual's biometric identifiers, such as fingerprints, or any biometric information, including any data regardless of the manner it is converted or stored, unless it first:

    a. informs the individual or the individual's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

    b. informs the individual or the individual's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

    c. receives a written release executed by the individual of the biometric identifier or biometric information or the individual's legally authorized representative.

740 ILCS 14/15(b)(1)-(3).

7. Private entities in possession of biometric information are also required to develop a publicly-available "retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

8. BIPA restricts how, when, and if a private entity may disclose biometric information by providing that "[n]o private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless:

   a. the individual of the biometric identifier or biometric information or the individual's legally authorized representative consents to the disclosure or redisclosure;

   b. the disclosure or redisclosure completes a financial transaction requested or authorized by the individual of the biometric identifier or biometric information or the individual's legally authorized representative;

   c. the disclosure or redisclosure is required by State or federal law or municipal ordinance; or

   d. the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction."

740 ILCS 14/15(d).

9. Private entities are also prohibited from profiting from an individual's biometric identifier or biometric information. BIPA provides without exception that "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c).

10. The Illinois Legislature recognized a need for additional protection and recourse because "biometrics are unlike other unique identifiers that are used to access finances or other sensitive information" and therefore required its own set of rules. For example, even sensitive information like Social Security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual [and] therefore, once compromised, the individual has no recourse, is at a heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." 740 ILCS 14/5.

11. Compliance with BIPA is minimally invasive. Defendant could have accomplished compliance with a single sheet of paper explaining the necessary disclosures, given to Plaintiff to read and sign.

12. To remedy irreparable harm caused by a private entity violating BIPA, BIPA creates a private right of action authorizing "[a]ny person aggrieved by a violation of" the statute to sue and recover for each violation liquidated damages of $1,000, or $5,000 in the event of an intentional or reckless violation, plus attorneys' fees, costs, and appropriate injunctive relief. 740 ILCS 14/20.

13. The statute of limitations applicable to BIPA is five (5) years. *Tims, et al. v. Black Horse Carriers, Inc.*, Case No. 127801, __ N.E. 3d __, 2023 WL 1458046, slip op. at 13 (Ill. Sup. Ct. Feb. 2, 2023).

14. Therefore, on behalf of herself and the proposed Class defined below, Plaintiff seeks an injunction requiring Defendant to comply with BIPA, as well as an award of statutory damages to the Class members and monetary damages to be determined at trial, together with costs and reasonable attorneys' fees and costs.

## PARTIES

15. Plaintiff, Sharon Hill Turk, is and has been a resident and citizen of the state of Illinois, residing in Champaign County at all relevant times.

16. Defendant, Turbo Restaurants US, LLC, is a limited liability company, existing under the laws of Delaware, headquartered in Dallas, Texas, and licensed by the Illinois Secretary of State to conduct business in Illinois.

17. Defendant's registered agent for purposes of service of process is identified online as Corporate Creatins Network, Inc., 350 S. Northwest Hwy #300, Park Ridge, Illinois 60068.

## JURISDICTION AND VENUE

18. Pursuant to 28 U.S.C. §1332(a), this Court has diversity jurisdiction over Plaintiff's claims because the Defendant is a limited liability company under the laws of Delaware and is headquartered in Dallas, Texas, the Plaintiff is a resident of the state of Illinois, and the amount in controversy is at least $75,000.

19. Section 20(1) of BIPA provides that "[a] prevailing party may recover for each violation . . . (1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater." 740 ILCS 10 14/20(1).

20. Section 20(2) of BIPA provides that "[a] prevailing party may recover for each violation . . . (2) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater." 740 ILCS 10 14/20(2).

21. Given the length of Plaintiff's employment with Defendant, and number of times Plaintiff's biometric information was used by Defendant's biometric time clock system, Plaintiff could recover more than $75,000 in statutory damages by merely utilizing Defendant's technology

a minimum of seventy-five (75) times.

22. Additionally, the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), provides jurisdiction on the basis of a diversity of citizenship, because Defendant employed over 100 employees during the relevant time period and the amount in controversy exceeds $5,000,000.

23. Pursuant to 28 U.S.C. § 1391, venue is proper because Defendant is registered to conduct and does conduct substantial business in Illinois, and this lawsuit arises out of acts and omissions which occurred in this District.

## FACTUAL ALLEGATIONS

24. Defendant required Plaintiff and the other employees to submit to an initial scan of their fingerprints at the outset of their employment for storage in Defendant's electronic employee database.

25. The unique nature of biometric identifiers allows private entities, such as Defendant, to instantly gather an unforgeable and accurate signature of their employees.

26. Defendant used a time-tracking system that required employees to use their fingerprints as a means of authentication. For example, instead of using an employee ID number to clock in and out of shifts, and for meal breaks, Plaintiff and other employees were required to use their fingerprints.

27. Additionally, Plaintiff and other employee who used or accessed the point-of-sale ("POS") system at Defendant's restaurant locations were required to use their fingerprint scan each time they accessed the registers and conducted any transactions.

28. Defendant failed to inform Plaintiff and other employees of the extent and purpose for which it collected their biometric data and whether the data was or will be disclosed to third parties.

29. Defendant failed to maintain a written, publicly available policy identifying its retention schedule for biometric data or providing guidelines for permanently destroying its employees' fingerprints when the initial purpose for collecting or obtaining the employees' fingerprints is no longer relevant, as required by BIPA. An employee who leaves the company does so without any knowledge of when or if their biometric identifiers will be removed from Defendant's database.

30. Additionally, employees are never informed of what would happen to their biometric information were Defendant to close the specific restaurant(s) in which they worked, go out of business entirely, merge with another franchisee, or go bankrupt.

31. Defendant failed to publish a legally mandated data-retention policy and to disclose the purposes for which it collected biometric data. In fact, Defendant's employees have no idea whether Defendant sells, discloses, or otherwise disseminates their unique biometric identifiers which, once compromised, cannot be undone. Defendant's employees were not told to whom Defendant discloses their biometric data.

32. On top of Defendant's failure to notify employees and the public of the basics of its collection, use, retention, and protection of biometric data, it also failed to obtain the written release required by BIPA before collecting its employees' biometric data.

33. Defendant failed to publish a biometric data-retention policy or obtain written releases from its employees prior to the collection of their fingerprints, therefore, violating BIPA.

**FACTS SPECIFIC TO THE NAMED PLAINTIFF**

34. Plaintiff, Sharon Hill Turk, is a former employee of a restaurant operated by Defendant, located at: 1913 W. Springfield Ave., Champaign, Illinois 61455. Plaintiff was employed at that location from approximately March 4, 2022 to August 22, 2022.

35. Upon Plaintiff's employment with Defendant, Plaintiff was required to submit to a scan of her thumbprint, thereby capturing, collecting, or otherwise obtaining Plaintiff's biometric identifier.

36. Defendant required Plaintiff to use fingerprint-based timekeeping and POS systems in the course of her normal and required job duties.

37. Defendant required Plaintiff to use her scanned thumbprint to clock in and out of her shifts and breaks, or make a sale to a customer, thereby capturing, collecting, or otherwise obtaining Plaintiff's biometric identifier repeatedly.

38. Defendant never informed Plaintiff of the specific purposes or length of time for which it collected, stored, and used Plaintiff's thumbprint.

39. Defendant did not obtain a written release authorizing the collection, capture, other obtainment, or subsequent disclosure of Plaintiff's biometric identifier.

40. Defendant does not make publicly available, and has not made publicly available, any biometric data-retention policy, nor has Defendant informed Plaintiff whether it will ever permanently delete Plaintiff's thumbprint.

41. Plaintiff has continuously and repeatedly been exposed to the harms and risks created by Defendant's violations of BIPA.

## CLASS ACTION ALLEGATIONS

42. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of:

> All citizens of Illinois whose biometric identifiers or biometric information were collected, captured, stored, transmitted, disseminated, or otherwise obtained by or on behalf of Turbo Restaurants US, LLC at any time in the past five years.

(hereinafter referred to as the "Class"). Plaintiff reserves the right to amend the putative class

definition if necessary.

43. The Class members are so numerous that joinder of all Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Class members. The Class members should be easy to identify from Defendant's records.

44. Plaintiff's claims are typical of the claims of the Class she seeks to represent, because the basis of Defendant's liability to Plaintiff and the Class is substantially the same, and because Defendant's conduct has resulted in similar injuries to Plaintiff and to the Class.

45. There is a well-defined community of interest among the Class members and common questions of law and fact predominate in this action over any question affecting individual Class members. These common legal and factual questions include but are not limited to:

   a. Whether Defendant's biometric system collects, captures, or otherwise obtains biometric identifiers or biometric information;

   b. Whether any biometric information is generated or otherwise derived from Defendant's biometric system;

   c. Whether Defendant disseminates biometric information;

   d. Whether Defendant made available to the public a written policy that establishes a retention schedule and guidelines for destroying biometric identifiers or biometric information;

   e. Whether Defendant obtained a written release from the Class members before capturing, collecting, or otherwise obtaining their biometric identifiers or biometric information;

   f. Whether Defendant's conduct violates BIPA;

   g. Whether Defendant's BIPA violations are willful or reckless; and

   h. Whether Plaintiff and the Class members are entitled to damages and injunctive relief.

46. Plaintiff will fully and adequately protect the interests of the Class members and

has retained counsel who are qualified and experienced in the prosecution of class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Class members.

47. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, inter alia, it is economically infeasible for the Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout Illinois.

48. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case, and Defendants have advanced, networked computer and biometric systems that will allow the class, biometric information, and damages issues, in this case, to be resolved with relative ease.

49. Because the elements of Fed. R. Civ. P 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559, U.S. 393, 398 (210) (By its terms [Rule 123] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claims as a class action").

50. Because Defendants acted and refused to act on grounds that apply generally to the Class members, and because declaratory relief is appropriate in this case with respect to the Class members as a whole, class certification under Fed. R. Civ. P. 23(b)(2) is also appropriate.

## FIRST CAUSE OF ACTION

**Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, et seq.**
**(Brought by Plaintiff on Behalf of the Class against Defendant)**

51. Plaintiff realleges and incorporates by reference all allegations in all preceding

paragraphs.

52. At all relevant times, Defendant was a limited liability company under the laws of Delaware, headquartered in Texas, and therefore a "private entity" under 740 ILCS 14/10.

53. To track employee hours and attendance, stop any time clock abuse, decrease payroll mistakes, and prevent fraud and theft at the POS, Defendant obtains and relies on data and information derived from biometric identifiers and biometric information it collects, captures, stores, transfers, and/or uses from the Plaintiff and Class members upon their employment with Defendant.

54. In violation of 740 ILCS 14/15(b), Defendant fails to provide the required written disclosures regarding its use of such biometric information, the purpose or duration of such use, and also failed to obtain releases from Plaintiff and the Class members.

55. Defendant collects, captures, stores, transfers, and/or uses Plaintiff's and Class members' biometric identifiers or biometric information through its POS system. Therefore every time Plaintiff or the Class members clocked in or out for a shift or meal break, or otherwise accessed the POS, Defendant obtained a scan of their fingerprints, thereby collecting, capturing, storing, transferring, or using Plaintiff's and the Class members' biometric information without their consent or a written plan for retention.

56. Once obtaining Plaintiff and Class members' biometric identifiers and biometric information, Defendant upon storing it failed to provide and make public under 740 ILCS 14/15(a) a retention and destruction schedule for such biometric information.

57. BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively damages of $1,000 for each negligent violation of the BIPA.

58. Defendant's violations of BIPA, were knowing and willful. Defendant failed to

comply with BIPA in the course of its conduct, or omissions, as set forth herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully requests this Court enter an order:

a. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as the representative of the Class, and appointing Plaintiff's lawyers as Class Counsel;

b. Declaring that Turbo Restaurants US, LLC, as described above, violated BIPA;

c. Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA;

d. Awarding statutory damages of $5,000 for each willful and/or reckless violation of the BIPA, pursuant to 740 ILCS 14/20(1);

e. Awarding statutory damages of $1,000 for each negligent violation of the BIPA pursuant to 740 ILCS 14/20(3);

f. Awarding reasonable attorneys' fees, costs, and other litigations expenses, pursuant to 740 ILCS 14/20(3);

g. Awarding pre- and post-judgment interest, as allowable by law; and

h. Awarding such further and other relief as the Court deems just and equitable.

## **JURY DEMAND**

Plaintiff, individually and on behalf of the proposed Class, by and through her attorneys, hereby demands a trial by jury for all issues so triable.

DATED: February 10, 2023	Respectfully submitted,

By:	*/s/ Jesse L. Young*
Jesse L. Young (P72614)
SOMMERS SCHWARTZ, P.C.
141 E. Michigan Avenue, Suite 600
Kalamazoo, Michigan 49007
(269) 250-7500
jyoung@sommerspc.com

          Jason J. Thompson (P47184)
          Kathryn E. Milz (ARDC# 6297213)
          SOMMERS SCHWARTZ, P.C.
          One Towne Square, Suite 1700
          Southfield, Michigan 48076
          (248) 355-0300
          jthompson@sommerspc.com
          kmilz@sommerspc.com

          *Attorneys for Plaintiff and the Putative Class*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHARON HILL TURK, on behalf of herself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) Case No. _____ ) |
| v. | ) ) |
| TURBO RESTAURANTS US, LLC, a Texas limited liability company, | ) ) ) |
| Defendant. | ) ) ) ) ) |

## VERIFICATION

I Sharon Hill Turk being first duly sworn, Plaintiff in the above-entitled cause, deposes and says that I have read the foregoing Verified Class Action Complaint and know its content and that to the best of my knowledge, information and belief, the factual allegations are true and accurate.

Sharon Hill Turk

Subscribed and sworn to before me this ___ day of February, 2023

Notary Public

OFFICIAL SEAL
JOEL SPENCER
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 11/06/2023

14